BRENT D. AMUNDSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Amundson v. Commissioner
Docket No. 10095-88
United States Tax Court
T.C. Memo 1990-337; 1990 Tax Ct. Memo LEXIS 355; 60 T.C.M. (CCH) 39; T.C.M. (RIA) 90337; July 3, 1990, Filed *355 Decision will be entered under Rule 155. Brent D. Amundson, pro se. Donald R. Gilliland, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies of $ 12,184 and $ 6,366 in petitioner's Federal income taxes for *356 1983 and 1984, respectively. Respondent also determined that petitioner was liable for additions to tax of $ 609.20 and $ 318.30 under section 6653(a)(1); 50 percent of the interest due on $ 12,184 and $ 6,366 under section 6653(a)(2); and $ 3,046.00 and $ 1,591.50 under section 6661, for 1983 and 1984, respectively. After concessions, the issues for decision are whether petitioner is entitled to deductions for interest and rental expenses, employee business expenses, *357 moving expenses, job hunting expenses, and miscellaneous interest, and whether petitioner is liable for the additions to tax determined by respondent. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Sunnyvale, California, at the time he filed his petition. Prior to or during 1977, petitioner's sister and her then fiance purchased a residence at 21435 Park Brook, Katy, Texas (the residence). The purchasers financed the acquisition by a loan from Home Savings Association, secured by a mortgage on the residence. When petitioner's sister and her fiance broke off their engagement, petitioner's father made a payment to the former fiance for the fiance's interest in the residence. In about March 1978, petitioner agreed with his sister that he would pay off the mortgage in exchange for a one-half interest in the residence. Petitioner resided in the residence from *358 December 1977 through May 1981. Petitioner considered the residence to be his home and not an investment. He did not, however, disclose his ownership or become directly obligated to Home Savings Association because he did not wish to incur fees attendant to refinancing. In 1981, petitioner's sister married. Petitioner asked for and received from his sister a handwritten note in which she stated that petitioner was entitled to a 50-percent interest in the residence "as of March 15, 1978." On December 31, 1985, after an audit of his 1983 and 1984 tax returns had commenced, petitioner requested and received from his sister and her husband a quitclaim deed for an undivided one-half interest in the residence. The quitclaim deed, however, was not recorded. During 1983, petitioner received rental income and incurred expenses relating to the residence, and he made payments due to Home Savings Association on the mortgage. The lease on the residence during that year specified rental of $ 570 per month, the monthly payment due on the mortgage. The lessee made some payments directly to Home Savings Association. During 1984, petitioner paid $ 3,645 to Home Savings Association as the interest *359 due on the mortgage on the residence. During 1983 and part of 1984, petitioner was employed as an account executive for Tymnet, Inc. While he was employed by Tymnet, Inc., petitioner was reimbursed for business-related automobile expenses. His employment with Tymnet, Inc., ended when he resigned his position in June 1984. Because the economy in Houston, Texas, was depressed, he investigated employment opportunities in Dallas, Texas, and in Colorado, New Mexico, and California. He was employed by Amistar Corporation for 2 weeks in California, but he resigned that position. He was offered a job by McDonnell-Douglas Corporation, which reimbursed him for travel expenses incurred in traveling to California and returning to Houston for personal matters. He was eventually offered employment in Japan, and he moved to Tokyo in January 1985. On his tax return for 1983, petitioner reported rental income of $ 3,855 and deducted expenses totaling $ 15,451, claiming a loss of $ 11,596 from the residence. He claimed employee business expenses of $ 8,900 for travel, $ 7,800 for meals, lodging and other "away from home" expenses, and $ 3,959 in automobile expenses, computed by applying standard *360 mileage rates to a total of 16,800 miles and adding other automobile-related expenses. Petitioner reported employer reimbursement of $ 15,033 of his expenses. On his tax return for 1984, petitioner claimed moving expenses of $ 6,000, automobile expenses of $ 4,637, meals and lodging expenses of $ 4,000, interest of $ 5,745, outside sales expenses of $ 3,000, and travel expenses of $ 4,200. Respondent disallowed the deductions set forth above and made other adjustments now resolved between the parties. ULTIMATE FINDING OF FACT Petitioner acquired a one-half equitable interest in the residence when he agreed with his sister to assume her indebtedness to the lender. OPINION Petitioner has the burden of proving that respondent's determinations were erroneous. Rule 142(a); Rockwell v. Commissioner, 512 F.2d 882 (9th Cir. 1975), affg. a Memorandum Opinion of this Court. Petitioner presented to respondent and at trial various receipts for expenses, but the receipts did not coincide with the amounts claimed on his tax returns for 1983 and 1984. He testified that he *361 had estimated some of those amounts. After trial, in lieu of the brief required by the Court's order and Rule 151, he submitted additional schedules that were not based on evidence in the record and cannot be considered. Rule 143(b). In any event, the total amounts spent by petitioner cannot be determined from the record with any degree of certainty. A major item of expense claimed by petitioner, and the one for which he has reasonably complete records, is interest paid on the mortgage on the residence. Petitioner's sister, not petitioner, was liable to the original lender in relation to that mortgage. Petitioner had agreed with his sister, however, that he would make the mortgage payments and, in turn, would have a 50-percent interest in the residence. Although the documentation of the agreement between petitioner and his sister was casual and unclear, his testimony is not improbable or inherently incredible. His testimony is supported by documentary evidence that he acted as owner of the property from 1979 through the years in issue. We conclude that during 1983 and 1984 he had a 50-percent equitable interest in the property and, in effect, had assumed liability for the *362 mortgage. Respondent contends that petitioner may not deduct the interest because he did not have a legal obligation to the lender, citing Golder v. Commissioner, 604 F.2d 34 (9th Cir. 1979), affg. a Memorandum Opinion of this Court, and cases in which a taxpayer was denied interest deductions on a residence belonging to a relative, e.g., Tuer v. Commissioner, T.C. Memo. 1983-441. The cases relied on by respondent are distinguishable. In Golder v. Commissioner, supra, the taxpayers were guarantors of a debt of their corporation, which debt was also secured by the taxpayers' house. The Court of Appeals applied the general rule that, for interest to be deductible under section 163(a), the interest must be on the taxpayer's own indebtedness, not the indebtedness of another. The court discussed section 1.163-1(b), Income Tax Regs., which provides, in part, as follows: Interest paid by the taxpayer on a mortgage *363 upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness. * * * In discussing the taxpayers' argument that section 1.163-1(b), Income Tax Regs., created an "exception" that allowed them to deduct the payments they made because of the lien on their home, the Court of Appeals stated: Reg. section 1.163-1(b) does nothing more than permit the deduction of interest in situations where the taxpayer-borrower is not personally liable on a mortgage of property which is used as security for a loan made to the taxpayer. For example, a taxpayer purchases land paying part of the purchase price in cash and the balance with a non-recourse note secured by a mortgage on the land; there, in the event of default, the creditor may look only to the property. Although the taxpayer is not directly liable on the debt -- since the creditor may look only to the pledged property for repayment -- Reg. section 1.163-1(b) permits *364 the taxpayer to deduct interest payments since the default affects only the taxpayer and no one else. The taxpayer must pay the interest to avoid foreclosure of his ownership interest in the property. Thus Reg. section 1.163-1(b) does not create an "exception" to the statutory rule of section 163(a) that interest is deductible only with respect to the indebtedness of the taxpayer, but simply recognizes the economic substance of non-recourse borrowing. Reg. section 1.163-1(b) permits the taxpayer-borrower in such cases to deduct the interest on the loan even though the taxpayer is not personally liable on the loan. [1]
*365 Respondent argues that section 1.163-1(b), Income Tax Regs.,: has been uniformly interpreted by courts to simply mean that a deduction is allowable where the taxpayer has borrowed money on a nonrecourse basis. It does not provide for a deduction for interest paid on a loan which, as in the present case, was not made to the taxpayer and from which the taxpayer did not derive the benefit of the use of the money. Golder, supra; Abdalla v. Commissioner, 647 F.2d 487, 504 (5th Cir. 1981); Hynes v. Commissioner, 74 T.C. 1266, 1287-88 (1980). In the cases relied on by respondent, however, the Court found either that the taxpayer did not have an indebtedness or did not have an interest in the mortgaged property. The evidence is sufficient in this case to support our finding that petitioner had an ownership interest in the residence. Petitioner's subsequent performance of the obligations of an owner and his sister's written acknowledgement of his interest were sufficient to render petitioner's obligation to her to pay off the mortgage an enforceable interest-bearing debt to her for the amount of the mortgage *366 and at the rate of interest specified in the mortgage. His payments to Home Savings Association, made directly or by causing his tenant to make rent payments, were, in effect, payments of principal and interest to his sister. Thus this case is more like Markward v. Commissioner, T.C. Memo. 1978-312; Riordan v. Commissioner, T.C. Memo. 1978-194; and New McDermott, Inc. v. Commissioner, 44 B.T.A. 1035 (1941), than the cases cited by respondent. We conclude, therefore, that petitioner is entitled to deduct the interest payments made by him on the mortgage on the residence during the years in issue. We are not persuaded, however, that petitioner is entitled to any additional deductions relating to the residence. He has not, for example, established an eligible basis for or method of depreciation. By his own testimony, he regarded the residence as his home and rented it out only to minimize the cost of maintaining it after he and his sister no longer lived there. He did not regard it as an investment. Thus, section 183(b) limits his deductions to an offset of the gross income he received from the rent. We are satisfied that *367 petitioner's interest expenses and other rental expenses relating to the property at least equaled the rental reported for 1983. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Respondent has conceded that petitioner made all of the interest payments claimed for 1984, totaling $ 3,645. Petitioner is thus entitled to deduct $ 3,855 in 1983 and $ 3,645 in 1984. We are not persuaded that petitioner is entitled to deduct business expenses, moving expenses, or job search expenses beyond those conceded by respondent. Petitioner's records and his testimony are too confused, uncertain, and ambiguous to support the deductions. From the few records that have been presented, it appears that he may have claimed duplicate deductions for the same item, secured reimbursement for some items, or claimed deductions for items that are nondeductible personal expenses under section 162. Petitioner has not shown which of his employee business expenses were not reimbursed or reimbursable by his employer. With respect to moving expenses incurred in California, he has not satisfied the requirement of section 217(c) that he be a full-time employee in the new principal place *368 of work for at least 39 weeks out of the 12-month period immediately following his arrival in the new location. He has not met the substantiation requirements of section 274(d) with respect to travel, entertainment, and gift expenses that he claims. Petitioner claimed, but has not substantiated, interest on a loan from his father and on student loans. Unlike the loan from his sister, petitioner has not presented evidence that he had a valid indebtedness to his father. Petitioner did not even recall precisely the amount of the loan. With respect to the student loans, petitioner provided promissory notes and copies of certain checks reflecting payments. Although the amount of interest reflected in the payments cannot be precisely determined from the record, we conclude that petitioner is entitled to deduct $ 100 as interest on student loans in 1984. Finally, petitioner has not persuaded us that respondent's application of the additions to tax under section 6653(a) for negligence and section 6661 for substantial understatement of income taxes is erroneous. Petitioner's use of estimates and his failure to maintain adequate records justify imposition of the additions to tax under *369 section 6653(a). His brief has not cited a single authority, and he otherwise has not shown any reason that the section 6661 additions to tax would not apply (assuming the recomputed deficiencies exceed 10 percent of the total tax required to be shown on the return or $ 5,000). Decision will be entered under Rule 155. Footnotes
1. Taxpayers cite New McDermott, Inc.,44 B.T.A. 1035 (1941), for the proposition that they need not be the borrowers in order to deduct interest payments under I.R.C. section 163. That decision is not helpful to their case. In New McDermott, the taxpayer received property subject to a mortgage which the taxpayer did not assume until after the taxable year, so that the taxpayer was not directly liable thereon. The court held, under the predecessor regulation identical to Reg. section 1.163-1(b), that the interest paid by the taxpayer was deductible. The court reasoned as follows: "The mortgage indebtedness is a lien on the property of which petitioner is the legal owner and upon which petitioner must necessarily rely for its source of income. Petitioner's whole reason for being would be negatived if the mortgage were foreclosed and the property sold to satisfy the mortgage. Interest accrued on the mortgage is interest on petitioner's indebtedness in spite of the fact that petitioner was not primarily liable on the mortgage." Id. at 1040-41 (emphasis added). As is clear from the above quotation, unlike the present case, the indebtedness upon which interest was paid in New McDermott was considered to be the taxpayer's own indebtedness. In the instant case the indebtedness was the corporation's, and the taxpayers merely guaranteed that corporate obligation. [Emphasis in original; 604 F.2d at 36↩.]